UNITED STATES of America,
Plaintiff–Appellee,

v.

Reggie L. RIVERS, Defendant–Appellant.

No. 97–1421.

United States Court of Appeals,
Seventh Circuit.

Argued July 9, 1997.

Decided July 28, 1997.

Colin Bruce (argued), K. Tate Chambers, Office of the United States Attorney, Peoria, IL, for Plaintiff–Appellee.

Joseph M. Borsberry (argued), Peoria, IL, for Defendant–Appellant.

Before BAUER, FLAUM and ROVNER, Circuit Judges.

FLAUM, Circuit Judge.

Reggie Rivers challenges the district court's determination that a pat-down search which resulted in his arrest for possession of cocaine with intent to distribute did not violate his Fourth Amendment rights. We affirm.

## I.

Reggie Rivers was the passenger in a car driven by Felton Bush, who was wanted on an outstanding arrest warrant for domestic battery. Peoria police officers Timothy Moore and John Couve were surveilling Bush's home in an attempt to secure a search warrant for evidence that Bush was dealing crack cocaine (actually, they had already gotten one warrant, but it had expired), and when they saw Bush and Rivers leaving in the car they decided to arrest Bush on the outstanding warrant. The officers, driving an unmarked vehicle, followed Bush's car into a shopping center parking lot, pulled in front of it, and approached the car with their guns drawn. Bush was removed from the car and arrested. When Moore searched Bush, he found plastic bags containing cocaine base and powder cocaine in his pockets.

During the arrest and search Couve had been covering Rivers. After Moore placed Bush into the police car, he asked Rivers to exit the car. Moore then performed a pat-down search, during which he felt a lump in Rivers's pocket. Believing it was a lump of crack cocaine, he asked Rivers what it was, and Rivers told him it was money. Moore repeatedly asked Rivers what the lump was, and each time Rivers answered money. Finally, Moore arrested Rivers, then pulled from Rivers's pocket a plastic bag containing nearly an ounce of crack cocaine. Rivers also had $42 in cash and a small amount of powder cocaine in his pocket.

Rivers moved the district court to suppress evidence of the crack; the district court granted the motion on the grounds that the record did not show that there was something unique about crack cocaine that would have allowed Moore to identify it immediately, and thus Moore's search exceeded the boundaries of the "plain feel" doctrine established by *Minnesota v. Dickerson*, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). The government moved for reconsideration, identifying Moore's testimony that crack cocaine has a distinctive feel (asymmetrical, with different size lumps and different angled edges) and that he had felt crack cocaine in pants pockets approximately twenty times. In light of this evidence the district court vacated its earlier ruling and denied Rivers's motion to suppress.

 Rivers entered into a plea agreement and pleaded guilty to possession of crack cocaine with the intent to distribute, 21 U.S.C. § 841(a)(1), after reserving his right to appeal the district court's refusal to suppress the evidence of the crack cocaine. He now appeals that decision. We review legal determinations of reasonable suspicion or probable cause de novo, but questions of fact for clear error. *United States v. Stribling*, 94 F.3d 321, 323 (7th Cir.1996) (citing *Ornelas v. United States*, —— U.S. ——, ——, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996)).

## II.

On appeal, Rivers makes two arguments: (1) that the officers did not have sufficient

reasonable suspicion to engage him in a *Terry* stop; and (2) that the extent of the pat-down search was invalid in light of *Dickerson.*

#### A.

■ Under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), police officers may temporarily stop a person to investigate whether the person has recently committed or is about to commit a crime. To justify the stop, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences drawn from those facts, reasonably warrant that intrusion." *Id.* at 21, 88 S.Ct. at 1880. During a *Terry* stop, an officer with "reason to believe he is dealing with an armed and dangerous individual" may conduct a non-invasive pat-down search of a detainee to ensure for his own safety and that of others nearby that the detainee does not possess a weapon. *Id.* at 27, 88 S.Ct. at 1883. "A search for weapons in the absence of probable cause to arrest, however, must, like any other search, be strictly circumscribed by the exigencies which justify its initiation." *Id.* at 25–26, 88 S.Ct. at 1882.

■ Rivers argues that Moore and Couve had no reasonable or articulable suspicion that Rivers was involved in criminal activity and thus it was a violation of Rivers's Fourth Amendment rights for Moore to ask him to exit the car and to search him. Before arguing the question on the merits, the government counters by pointing to Rivers's plea agreement and asserting that he did not reserve the right to appeal this issue.

The plea agreement provides:

Pursuant to Federal Rule of Criminal Procedure 11(a)(2), the defendant reserves the right to seek review of the Court's order denying the defendant's motion to suppress the evidence seized from his person on May 7, 1996. Specifically, the defendant reserves the right to appeal the Court's order that Peoria Police Department Officer Moore, did not violate the defendant's constitutional rights when he removed the crack cocaine from the defendant's pants pocket on May 7, 1996.

Although a close question, we conclude that this language—particularly the first sentence—is general enough to allow Rivers to argue in this court the propriety of the *Terry* stop, especially given that the issue was argued in precisely this manner before the district court during the hearing on the motion to suppress.

■ Having overcome that hurdle, though, Rivers's argument does not advance much farther. The Supreme Court recently ruled that police officers may ask passengers to step out of a vehicle during a *Terry* stop. *Maryland v. Wilson,* —— U.S. ——, ——, 117 S.Ct. 882, 886, 137 L.Ed.2d 41 (1997). There is no doubt that the officers had the right to make the original stop and arrest Bush, and consequently Rivers had no right to remain in the car. Further, *Terry* requires only that "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." 392 U.S. at 27, 88 S.Ct. at 1883. Of course, the court must keep in mind that "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." *Ybarra v. Illinois,* 444 U.S. 85, 91, 100 S.Ct. 338, 342, 62 L.Ed.2d 238 (1979). Under these circumstances, however, where a suspected drug dealer had been arrested in the middle of a shopping center parking lot, where police would legitimately want to ask Rivers a few questions, if only to determine whether he was competent to take charge of Bush's vehicle, and where, as Moore testified, drug dealers are often accompanied by armed guards, it was reasonable for him to ensure that Rivers had no weapons. *United States v. Menard,* 95 F.3d 9, 11–12 (8th Cir.1996) (reasonable for officer to check others in car for weapons after arresting gun-carrying companion suspected of drug trafficking); *see also United States v. Bell,* 762 F.2d 495, 502 (6th Cir.1985) (although search could not be justified by defendant's mere presence in car, facts known to officers about potentially armed and dangerous nature of driver, safety of citizens, and defendant's failure to comply with lawful orders all figure into reasonableness); *United States v.*

*Vaughan,* 718 F.2d 332, 335 (9th Cir.1983) (officers had right to detain defendant, second passenger in car, and while they were detaining him it was reasonable to engage in limited *Terry* search for weapons). Consequently, Rivers's constitutional rights were not violated by being subjected to a pat-down search.

### B.

 Rivers further argues that Moore's search of his person exceeded the *Terry* stop boundaries outlined in *Minnesota v. Dickerson,* 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). In *Dickerson,* a case in which a police officer discovered a defendant had a lump of crack cocaine in his pants pocket, the Court held that "if a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons" under *Terry.* 508 U.S. at 375, 113 S.Ct. at 2137. Consequently, the officer may "seize non-threatening contraband detected during a protective patdown search of the sort permitted by *Terry.*" *Id.* at 373, 113 S.Ct. at 2136. The contraband's incriminating nature, however, must be immediately apparent to the frisking officer; in *Dickerson,* the seizure was constitutionally invalid because the officer continued to manipulate the lump in the defendant's pocket to determine its nature even after concluding it was not a weapon. *Id.* at 378, 113 S.Ct. at 2138–39.

In Rivers's case the district court was faced with conflicting testimony. Moore testified that he performed a traditional pat-down search and lingered not more than one or two seconds on the lump in Rivers's pocket. He tapped the lump again a few times when asking Rivers what the lump was to emphasize what he was talking about. Further, Moore testified that he knew immediately that the lump was crack cocaine because of its shape and texture and that he had felt cocaine in pockets approximately twenty times previously. Contradicting Moore, Rivers testified that Moore manipu-

lated the lump, squeezing it and feeling it for an extended period of time.

The district court chose to believe Moore rather than Rivers, a credibility determination that is supported by the evidence introduced during the hearing and thus cannot be considered clearly erroneous. *United States v. Jackson,* 95 F.3d 500, 508 (7th Cir.), *cert. denied,* —— U.S. ——, ——, 117 S.Ct. 404, 532, 136 L.Ed.2d 318, 417 (1996), *and cert. denied,* —— U.S. ——, 117 S.Ct. 717, 136 L.Ed.2d 636 (1997). Rivers contends that the officer could not have recognized the nature of the substance if he had searched Rivers as briefly as he testified, but given that recognition by touch is not impossible, *see Dickerson,* 508 U.S. at 376, 113 S.Ct. at 2137, such arguments go to Moore's credibility, a matter best left for the district court to evaluate. The district court found that Moore performed a traditional pat-down search and did not manipulate the lump in Rivers's pocket. Consequently, this case is distinguishable from *Dickerson*—there was no impermissible further searching, as Moore recognized the incriminating nature of the contraband immediately.

This court has not had occasion to consider a case so factually analogous to *Dickerson,* but other courts have upheld the admission of evidence discovered through non-intrusive pat-down searches during which the incriminating nature of the contraband is ascertained immediately. In *United States v. Hughes,* 15 F.3d 798, 802 (8th Cir.1994), for example, an officer performing a valid *Terry* pat-down search felt lumps of crack cocaine in defendant's pants pocket. Because his first impression was that the lumps were contraband and no further manipulation was necessary the court upheld the seizure of the cocaine. *Id.* See also *United States v. Lang,* 81 F.3d 955, 967 (10th Cir.1996) ("Under *Dickerson,* Officer Mumma's discovery of the plastic bag of cocaine in Douangmala Lang's pocket was reasonable because there is no evidence he did anything more intrusive than a simple pat down search."); *United States v. Ashley,* 37 F.3d 678, 681 (D.C.Cir. 1994) (during consensual search, officer detected package of crack cocaine in defendant's underwear); *United States v. Craft,* 30

F.3d 1044, 1045 (8th Cir.1994) (during consensual search, officer's experience led him to conclude immediately that bulges on defendant's ankles were controlled substances).

In contrast, seizures considered unconstitutional resulted from investigative overreaching not present here. *See United States v. Schiavo*, 29 F.3d 6, 9 (1st Cir. 1994) (search impermissible because officer explored paper bag in defendant's jacket after concluding that it did not contain weapon); *United States v. Gibson*, 19 F.3d 1449, 1451 (D.C.Cir.1994) (hard, flat object did not reveal incriminating character such to justify further search); *United States v. Ponce*, 8 F.3d 989, 999 (5th Cir.1993) (absent defendant's consent search would have been impermissible under *Dickerson*, because incriminating character of paperwrapped heroin found in defendant's watch pocket not immediately apparent).

Because Officer Moore immediately recognized the incriminating nature of the lump in Rivers's pocket, his arrest of Rivers was supported by probable cause and his warrantless seizure of the crack cocaine was justified. *Dickerson*, 508 U.S. at 375–76, 113 S.Ct. at 2137.

## III.

The search of Rivers was permitted by *Terry*, and the facts found by the district court do not support a finding of overreaching in violation of *Dickerson*. Consequently, the district court's denial of Rivers's motion to suppress is AFFIRMED.