UNITED STATES of America,
Plaintiff–Appellee,

v.

Michael GRIFFIN, Defendant–Appellant.

No. 96–3931.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 10, 1997.

Decided July 30, 1998.

Jerome N. Krulewitch, Office of the United States Attorney, Criminal Appellate Division, Chicago, IL, Steven Chanenson (argued), Office of the United States Attorney, Chicago, IL, for Plaintiff–Appellee.

Peter J. Vilkelis (argued), Chicago, IL, for Defendant–Appellant.

Before BAUER, COFFEY, and EASTERBROOK, Circuit Judges.

COFFEY, Circuit Judge.

After a bench trial, Michael Griffin was convicted of one count of possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). On appeal, Griffin challenges the district court's denial of a motion to suppress, the sufficiency of the evidence, a two-level enhancement under Sentencing Guideline § 2D1.1(b)(1) for possession of a dangerous weapon, the district court's refusal to reduce his sentence for his allegedly having played a minor role in a drug conspiracy under Sentencing Guideline § 3B1.2, and the district court's calculation of the criminal history category.

## I. FACTUAL BACKGROUND

As part of an ongoing investigation into the murder of a drug trafficker, Kenneth

Williams, various reliable witnesses informed Chicago Police Detective Michael Bobko, a veteran detective with over twenty years of experience enforcing narcotics laws, about an individual known as Mr. Deton, who might have information concerning the murder. On April 13, 1996, Detective Bobko and other officers were assigned to conduct a surveillance of the interior and exterior of a clothing store called "Boutique Chicago" because Mr. Deton had an ownership interest in the store. Although the officers did not locate the party in question, they did observe Michael Griffin, an employee at Boutique Chicago, depart from the clothing store premises, drive a green Yukon, which is a large jeep-like vehicle, and eventually return to the store. Around 2:00 p.m. on April 13, the detectives observed two Hispanic men arrive. As one store employee walked the men to the back of Boutique Chicago, another employee physically ushered a customer out of the store and locked the front door.

Shortly thereafter, the two Hispanic men exited with Griffin. At this time, Griffin directed them in the direction of his Yukon, handing one of the men a key. The man drove away in Griffin's vehicle. Based on the information that he had combined with his experience with narcotics investigations, including the information that the source of drugs for the murdered drug trafficker was a Hispanic male, Detective Bobko believed that the Hispanic male might be procuring narcotics for Griffin. Accordingly, the detectives followed Griffin's vehicle to a nearby neighborhood in Chicago. They lost sight of the Yukon momentarily, but shortly thereafter discovered it parked against a fence in an alley. The detectives observed the driver load a large, tan box into the vehicle's cargo space.

After the Hispanic male left the premises, Detective Bobko testified that the Hispanic male drove a circuitous route, which included driving completely around the block from where he started during this time. The driver kept looking in the rear view mirror. The driver pulled the Yukon to one side and let other cars pass, and also drove the Yukon into an alley. Detective Bobko concluded at this time that the Hispanic male was conducting counter surveillance, so the detectives, not wanting to arouse the man's suspicions, returned to Boutique Chicago. Approximately ten minutes later, the same Hispanic male arrived near Boutique Chicago, but suddenly hit the brakes, turned left, and went four store fronts away from Boutique Chicago before parking, even though there were parking places directly in front of the store. He exited his vehicle, looked over his shoulders, walked toward a closed store, eventually entered Boutique Chicago, and walked to the back of the store with Griffin and his ·father, the store's owner. The actions of the remaining employee in the store gave the appearance of acting as a "look out." The two Hispanics who had arrived earlier left the store, laughing, and shortly thereafter, slapping palms.

Officer Bobko testified that he never lost sight of the sports vehicle for more than a few seconds for the rest of the afternoon. Several hours later when the store closed around 7:00 p.m., Griffin drove off followed by the officers. Within a few minutes, Griffin exited the expressway after looking at the officers' unmarked police car in the Yukon's side view mirror and pulled over to a curb in a no-parking area without the officers signaling him to do so. Detective Bobko pulled up behind him, exited the unmarked police car, and approached Griffin's driver's side window. The police officers were in civilian clothes, and as Detective Bobko approached the sports vehicle, he displayed no weapons and identified himself as a police officer. He told Griffin that he and his partner were conducting a narcotics investigation, and that they were interested in his Yukon. Griffin replied that it was his car. Detective Bobko then asked Griffin to get out of his car. Griffin complied, looking very nervous, breathing rapidly, trembling, and having difficulty speaking. Bobko asked Griffin if he was the only person who had driven his vehicle that day and Griffin replied "yes," but stopped mid-sentence and changed his answer to "no." He explained that during the day he was away from the store for awhile and when he returned he was told that someone else had used his vehicle. Griffin, possibly conveniently, could not remember who

used his vehicle or who told him it had been used.

Detective Bobko asked Griffin to provide proof of the vehicle's ownership, as well as personal identification for himself, such as his driver's license. Griffin complied with both requests. Detective Bobko told Griffin that he was not under arrest and advised him that he was free to leave. Griffin replied that he understood. The detective told Griffin that he and his partner had information that there might be narcotics in his Yukon. Detective Bobko asked Griffin if he thought that anyone could have put narcotics in his vehicle that day, to which Griffin responded "yes." Detective Bobko's next statement and question was, "If you think there might be drugs in your car and you have no involvement, would you allow us a look?" The detective explained that they could only search his vehicle with his consent and, if he refused to give consent, they would apply for a search warrant. Griffin responded that he did not want the officers to search the vehicle. Detective Bobko advised Griffin that he could leave, but based on what they knew, the officers were going to detain his vehicle long enough to get a police dog to do an external scent check.

The detective explained the police dog scent check procedure to Griffin and advised Griffin that if he wished, he was free to witness the procedure. Detective Bobko also explained that if the dog did alert and Griffin did not consent to a search of his vehicle, they would temporarily retain the vehicle and make an application for a search warrant. Griffin replied that he did not want to leave. However, a few minutes thereafter he changed his mind and departed, getting into a cab and leaving the scene without either retrieving his driver's license or the vehicle registration certificate from the police officers. The encounter between Detective Bobko and Griffin lasted about five minutes.

About twenty minutes later, the police search dog and his handler arrived and proceeded with the scent check. The dog went to the cargo door seam on the right side of the vehicle and gave a strong alert. The vehicle at this time was towed to police headquarters and placed in a police garage within

fifteen minutes of the scent check. Detective Bobko obtained a search warrant within approximately six hours. He then searched the vehicle. The officers found a large, tan box in the middle of the rear cargo space which they had seen the Hispanic male place in Griffin's Yukon earlier in the day. Detective Bobko, armed with the search warrant, opened the box and found ten plastic wrapped compressed packages filled with what appeared to be cocaine, as well as a cardboard box with a small electronic digital gram scale. They also uncovered a briefcase on the floor of the front passenger side of Griffin's Yukon which contained a loaded .45 caliber semi-automatic pistol, a cellular phone, and two safety deposit box keys. While searching the briefcase, the officers discovered some personal property and financial documents reflecting Griffin's name.

Two days after his initial apprehension and the search of his vehicle, Griffin was arrested and charged with knowingly and intentionally possessing with intent to distribute 9,965 grams of a mixture containing cocaine with an approximated street value of $1,250,000, in violation of 21 U.S.C. § 841(a)(1). He entered a plea of not guilty and thereafter filed a motion with the court to suppress the cocaine and other items of evidence recovered in his vehicle, contending that the officers were without reasonable, articulable suspicion to detain him. The trial court denied the motion. After the filing of a jury waiver, the trial judge conducted a bench trial and found Griffin guilty of the crime charged and proceeded to sentence him to 168 months' imprisonment and five years' supervised release.

## II. ANALYSIS

### A. INVESTIGATORY STOP

■ Griffin asserts that Detective Bobko and the other officers were without reasonable, articulable suspicion under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), to detain him. On appeal, we review the trial court's legal determinations of reasonable suspicion de novo and factual questions for clear error. *Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 134

L.Ed.2d 911 (1996). In the context of a motion to suppress evidence, we give special deference to the district court's rulings due to the fact-specific nature of the proceeding. *United States v. Stribling,* 94 F.3d 321, 323 (7th Cir.1996).

 *Terry* stops by their very nature are for the most part investigative and brief, allowing police officers the chance to verify suspicions that the person has been, is, or is about to engage in criminal activity. *United States v. Rivers,* 121 F.3d 1043, 1045 (7th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 582, 139 L.Ed.2d 420 (1997). To justify a *Terry* stop, the police officer must have specific and articulable facts taken together with rational inferences to warrant the intrusion. *Terry,* 392 U.S. at 21, 88 S.Ct. 1868. When this court considers the reasonableness of a *Terry* stop, the objective standard is whether the facts available to the officer at the time of the seizure warrant a person of reasonable caution to believe that the action taken was appropriate. *United States v. Tilmon,* 19 F.3d 1221, 1224 (7th Cir.1994). The reasonableness of an investigatory stop also depends on the extent of the intrusion. *Id.* Because determining reasonable suspicion involves probabilities and does not always involve hard certainties, the standard of the totality of the circumstances is applied. *Id.*

 Applying the totality of the circumstances standard, as well as the reasonable inferences drawn from the facts, we conclude that Detective Bobko had a reasonable suspicion that Griffin was involved in illegal drug activity. The district court's factual findings made during the suppression hearing are well supported in the evidence. While surveilling Griffin's place of business as a part of an ongoing investigation into the murder of a drug trafficker, the officers observed a series of suspicious events during a surveillance period of several hours. Two Hispanic men entered the clothing store, a store employee physically escorted a customer out of the store with his hand on the customer's back, and the store was immediately locked and secured even though it was only 2:00 p.m. Detective Bobko testified that the customer appeared agitated. At the same time, one of the Hispanic men drove off in Griffin's Yu-kon. The officers observed the Hispanic male while he loaded a large, tan box into the cargo space of the vehicle. The officers also observed this Hispanic male as he began to drive suspiciously, in all probability suspecting that he was being followed, causing the officers to return to Boutique Chicago. The officers observed the man return to Boutique Chicago and approximately ten minutes after another brief meeting in the back of the store with Griffin took place. Another employee within the premises was observed to appear to be looking out the large window and acting as a "look out." Later, when Griffin drove his sports utility vehicle away from the store, he drove onto the expressway, rapidly exited, and then proceeded to pull over to the curb in a business area, noparking zone. When Detective Bobko questioned Griffin, Griffin became extremely nervous, was breathing rapidly, and had difficulty speaking. He answered Detective Bobko's questions explaining that he may—or may not—have been the only person who used his Yukon that day. He did not remember who drove his Yukon that day or who told him the vehicle had been driven by another person. Having observed Griffin and the vehicle during the time frame at issue, the officers were well aware from their surveillance that Griffin was being less than truthful. In addition, Griffin went so far as to tell the police that someone may have put drugs in his vehicle.

 Giving deference to the district court's factual determinations at the suppression hearing, we conclude that those facts justified an investigatory stop under *Terry.* Based on the totality of the circumstances, including the officers' surveillance of Griffin in Boutique Chicago, the suspicious behavior of the Hispanic male who placed the narcotics in Griffin's vehicle, and the activity at Boutique Chicago that followed, the police certainly had reasonable cause to suspect that Griffin might be involved in an ongoing narcotics-related criminal activity. In addition, the brief detention of Griffin was not intrusive for the encounter lasted only about five minutes, during which time the detectives made clear to Griffin that he was free to leave at any time. The officers were in plain

clothes and an unmarked squad car, and neither displayed nor drew their weapons. The officers' detention of Griffin's vehicle was also reasonable because the police acted properly in conducting a scent check for narcotics and immediately obtaining a search warrant before entering the Yukon sports wagon. *See United States v. Hall,* 142 F.3d 988, 994 (7th Cir.1998). After a brief period of questioning Griffin, the officers decided to request a dog scent check. The dog and handler arrived about twenty minutes later and shortly after the dog was brought onto the scene, it immediately alerted the officers that narcotics were in the vehicle's rear cargo area. After approximately fifteen minutes, the officers secured the vehicle and towed it to a police garage, and obtained a search warrant. In light of these facts, the temporary detention of Griffin's vehicle for approximately six hours while the police obtained a warrant was reasonable. *See id.* at 994 (one-day temporary detention to investigate suspect's computer hard drive was reasonable). Griffin also suggests it was unreasonable to detain his vehicle because the police did not follow the vehicle for a ten-minute period of time after the Hispanic male loaded it with the large, tan box. However, this short time lapse does not negate the previous suspicious activity that went on both before and after the ten-minute surveillance lapse.

## B. SUFFICIENCY OF THE EVIDENCE

Next, Griffin maintains that the government failed to prove beyond a reasonable doubt that he knowingly possessed the cocaine found in his vehicle, an element required under 21 U.S.C. § 841(a)(1). *See United States v. Covarrubias,* 65 F.3d 1362, 1369 (7th Cir.1995). The police officers were surveilling Boutique Chicago as they witnessed Griffin hand the key to his Yukon to the Hispanic male, who drove to a different area of Chicago, loaded a large, tan box in the cargo space of the vehicle, and returned to Boutique Chicago. The Hispanic male was driving in a suspicious and erratic manner during which time he circled around the block and kept looking in his rear view mirror as the police followed. For the remainder of that day, the police officers observed that no one else had access to Griffin's Yukon. After Griffin left Boutique Chicago, he drove on the expressway briefly, exited, and pulled over to the curb in a business area, no-parking zone without direction from the following police officers. At that time, no one else was in the Yukon with Griffin. Shortly thereafter, Detective Bobko came up to the vehicle and proceeded to question Griffin, who was nervous and had difficulty speaking. During questioning, Griffin made contradictory statements about who had had access to his Yukon that day. He explained that during the day someone used his vehicle, but then added that he could not remember who it was that used his vehicle and who told him that another person had operated the vehicle. In addition, Griffin seemed very nervous during the Terry stop and questioning and in fact became so excited that he departed from the scene after telling the officers he wanted to stay without retrieving his driver's license and vehicle registration. After obtaining a search warrant, the government discovered not only $1,250,000 worth of cocaine, but also a digital gram scale, and a gun in Griffin's briefcase.

 In reviewing the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original). "[T]his court is not the trier of fact and we are required to uphold the jury's verdict where any rational trier of fact could have found the defendant guilty of the crime.... Only when the record contains no evidence, regardless of how it is weighed, from which the trier of fact could find guilt beyond a reasonable doubt, may an appellate court overturn the verdict." *United States v. Grier,* 866 F.2d 908, 923 (7th Cir.1989) (internal quotations and citations omitted). We " 'will not weigh the evidence or assess the credibility of the witnesses.' " Similarly, we have stated: 'It is well-settled law that a court of appeals does not stand in judgment of the credibility of witnesses.

Rather the question is left to the sound discretion of the trier of fact.'" *Id.* at 923–24 (quoting *United States v. Perry*, 747 F.2d 1165, 1170 (7th Cir.1984)).

When reviewing a sufficiency of the evidence challenge "we consider the evidence in the light most favorable to the Government, defer to the credibility determination of the jury, and overturn a verdict only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." [*United States v. Hickok*, 77 F.3d 992, 1002 (7th Cir.) (citations and internal quotations omitted), cert. denied, 517 U.S. 1200, 116 S.Ct. 1701, 134 L.Ed.2d 800 (1996)]. In determining if there was sufficient evidence we resolve all conflicts in the evidence in favor of the prevailing party.

*United States v. Moore*, 115 F.3d 1348, 1363 (7th Cir.1997).

■■■ Griffin argues that any evidence that he had to his knowledge that cocaine was in his vehicle was "strictly circumstantial." However, the trier of fact is entitled to infer knowledge from circumstantial evidence. *United States v. Uriostegui–Estrada*, 86 F.3d 87, 89 (7th Cir.1996). "'There is nothing novel about establishing a crime through the use of circumstantial evidence, for ... circumstantial evidence is not less probative than direct evidence, and, in some cases is even more reliable.'" *United States v. Ranum*, 96 F.3d 1020, 1026 (7th Cir.1996) (quoting *United States v. Hatchett*, 31 F.3d 1411, 1421 (7th Cir.1994)), *cert. denied*, —— U.S. ——, 117 S.Ct. 773, 136 L.Ed.2d 718 (1997). "[C]ommon sense should be used to evaluate what reasonably may be inferred from circumstantial evidence." *Grier*, 866 F.2d at 923 (internal quotations and citations omitted).

■■■ As previously stated, the police officers observed Griffin hand the key to his Yukon to the Hispanic male. As the police followed the Hispanic male, he drove to a different neighborhood in Chicago, loaded a large, tan box in the cargo space of the vehicle, and returned with it to Griffin's place of work, all the time driving in an erratic and suspicious manner. Detective Bobko testi-

fied that he watched the Yukon for the remainder of that day, observing that no one else had access to Griffin's vehicle. When Griffin pulled over after exiting the expressway without direction from the police officers, he was the only person in the Yukon. When Detective Bobko questioned Griffin he was nervous, had difficulty speaking, and was breathing rapidly. During Detective Bobko's interrogation, Griffin explained that during the day someone had used his Yukon, yet he conveniently could not remember who had used his vehicle nor who the person was who had told him that someone else had driven the vehicle. After obtaining a search warrant, the officers entered his car and uncovered $1,250,000 worth of cocaine, a digital gram scale, and a gun in Griffin's briefcase. From the totality of the circumstances surrounding the arrest and Griffin's extreme anxiety, the district court, as trier of fact, was entitled to infer that Griffin knew of the cocaine in his vehicle's cargo space. *See Stribling*, 94 F.3d at 324–25 (jury properly inferred from the defendant's nervousness, lies to police, and contradictory actions that defendant knew of the cocaine's presence); *see also Uriostegui–Estrada*, 86 F.3d at 89 (fact finder could reasonably believe that drug smuggler would not entrust cargo worth more than $1 million to a stranger unaware of its value).

■■ Griffin argues that the district court made a statement at the suppression hearing which indicates that its findings were irrational. After the parties presented evidence at the suppression hearing, the district court stated: "[I]f I don't grant this motion, we will see what happens if that is tried at trial in terms of your client's knowledge because I don't know for sure whether or not he knew there were drugs there." (Suppression Hearing Tr. at 102). We do not agree that this isolated remark in a 111–page transcript is sufficient to undermine the district court's subsequent finding of guilt after the completed trial. During the bench trial and from reviewing the record, we are convinced that the trial court weighed the evidence, made credibility determinations, and found that Griffin was guilty of possession of cocaine with the intent to distribute beyond a reason-

able doubt. The district court carefully and thoughtfully examined the evidence produced at trial, finding that Griffin was not an "unwitting mule," but certainly must have been aware of the narcotics in his vehicle. The court also considered the evidence of Griffin's reactions to Detective Bobko's inquiry about drugs and that a loaded gun and scale were found after the police searched Griffin's vehicle, which are the usual tools of a drug dealer. Thus, the court's isolated remark during the suppression hearing concerning Griffin's knowledge of the cocaine falls short of being a basis for rejecting the district court's finding of guilt beyond a reasonable doubt after the bench trial. *See United States v. Agilar,* 779 F.2d 123, 125 (2nd Cir.1985) (totality of evidence dispelled any reasonable doubt despite district court's remark about identification testimony when discussing evidence at trial).

## C. GRIFFIN'S SENTENCE

### 1. Enhancement for Possession of a Firearm

Griffin asserts that the district court's application of U.S.S.G. § 2D1.1(b)(1) was erroneous because it was clearly improbable that the handgun found in Griffin's briefcase was connected to the cocaine in his vehicle's cargo space. Section 2D1.1(b)(1) requires that the district court enhance a defendant's sentence by two points if a dangerous weapon is possessed during the commission of a drug offense unless it is clearly improbable that the weapon was connected with the offense. *United States v. McClinton,* 135· F.3d 1178, 1193 (7th Cir.) (citing U.S.S.G. § 2D1.1, comment. (n.3)), cert. denied, ─ U.S. ─, 118 S.Ct. 2308, 141 L.Ed.2d 167 (1998). Section 2D1.1(b)(1) requires active or constructive possession of a firearm. *United States v. Wetwattana,* 94 F.3d 280, 283 (7th Cir.1996). Constructive possession exists when a person exercises control over the firearm. *Id.* We review the district court's factual determination of whether Griffin possessed a dangerous weapon during a drug offense for clear error. *Id.*

A handgun was found in Griffin's briefcase along with many of his other personal items. Griffin maintains that it is not usual for people to carry handguns for protection in the area near Boutique Chicago. Further, he asserts that because the handgun was not on his person or secreted in his vehicle, but found in his briefcase, he did not possess it for purposes of § 2D1.1(b)(1). However, the definition of "possess" under § 2D1.1(b)(1) is not as defined and limited as Griffin asserts. Not only was Griffin's firearm found in his briefcase, but the proximity between the firearm and the cocaine, both found in the Yukon after Griffin had driven his vehicle, provided a sufficient nexus that the .45 caliber handgun was possessed in connection with the cocaine. *See United States v. Carmack,* 100 F.3d 1271, 1280 (7th Cir.1996) (proximity appropriate test for determining possession—a higher threshold is required in order to rise to the level of "use" or "carry"); *see also Arango–Alvarez v. United States,* 134 F.3d 888, 891 (7th Cir. 1998) ("use" involves the active employment of a firearm). In fact, the United States Supreme Court recently concluded that the meaning of the word "carry" under 18 U.S.C. § 924(c)(1), which requires a higher threshold than "possession," includes carrying a firearm in a vehicle. *Muscarello v. United States,* ─ U.S. ─, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998). Thus, we are of the opinion that Griffin's argument that even though the gun was in his vehicle, he did not "possess" the gun for purposes of § 2D1.1(b)(1), is without merit. Indeed, the trial court found that Griffin was carrying a large amount of drugs within "arm's reach" and that the gun was in a position readily available to him; allowing Griffin to use the gun to defend himself or the illegal contraband if necessary. We are convinced that this inference is reasonable because drug dealers often carry weapons to protect themselves and cash exchanged for drugs. *See Wetwattana,* 94 F.3d at 285. Thus, we conclude that the district court did not commit clear error in determining that Griffin possessed the handgun for purposes of § 2D1.1(b)(1).

### 2. Griffin's Role in the Offense

Griffin asserts that he was entitled to a reduction in his offense level under U.S.S.G. § 3B1.2 because he merely trans-

ported the drugs, *i.e.*, that he had a minor role in the drug conspiracy. However, Griffin was neither charged nor convicted of a conspiracy offense and was the only participant in the crime. In determining the applicability of § 3B1.2, "the relevant inquiry is whether the defendant was a minor participant in the crime for which he was convicted, not whether he was a minor participant in some broader conspiracy that may have surrounded it." *United States v. Brown*, 136 F.3d 1176, 1185–86 (7th Cir.1998). The trial court held Griffin accountable for the specific conduct in which he was engaged, *i.e.*, the amount of drugs he had carried in his vehicle. As such, he was not a minor participant in the crime, he was the only participant and "it makes no sense to claim that one is a minor participant in one's own conduct." *United States v. Lampkins*, 47 F.3d 175, 181 (7th Cir.1995). The facts of the case as set forth in this record made clear that Griffin was not a minor participant. We are of the opinion that the district court did not clearly err by refusing to reduce Griffin's offense level under § 3B1.2. *See Brown*, 136 F.3d at 1185.

### 3. Griffin's Criminal History

■ Griffin asserts that his criminal history category was calculated improperly. Under the Sentencing Guidelines, the district court is required to add one criminal history point for each prior sentence not counted in the other guideline sections, such as a suspended sentence. U.S.S.G. § 4A1.1(c); *United States v. Binford*, 108 F.3d 723, 725 (7th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 2530, 138 L.Ed.2d 1029 (1997). We review the district court's interpretation of the scope of the Sentencing Guidelines *de novo* and the district court's factual findings for clear error. *Binford*, 108 F.3d at 726.

■ In 1989, Griffin was convicted of "hindering apprehension" in Texas and sentenced to one year's probation. Upon the termination of his term of probation, the case was "dismissed." In 1991, Griffin was convicted for the unlawful use of a weapon in Illinois and served one year of supervision. Neither conviction was expunged. The district court concluded that these two prior sentences required the addition of two crimi-

nal history points, resulting in a criminal history category of II. Griffin contends that because these convictions should have been expunged, they cannot be counted pursuant to U.S.S.G. § 4A1.2(j). In general, district courts may consider a broad range of conduct when making sentencing determinations. *United States v. Gerstein*, 104 F.3d 973, 978 (7th Cir.1997); 18 U.S.C. § 3661. However, assuming that the convictions "should have been expunged but [were] not and therefore should not be counted, the sentencing hearing was not the appropriate forum to examine that question." *United States v. Caswell*, 36 F.3d 29, 31 (7th Cir. 1994). As such, Griffin could not challenge his Texas and Illinois state convictions at his federal sentencing hearing.

■ Griffin also argues that his Texas conviction, which was eventually dismissed, should not be counted as a prior conviction. The distinction between convictions that are set aside and expunged convictions is articulated in § 4A1.2 comment. (n. 10):

A number of jurisdictions have various procedures pursuant to which previous convictions may be set aside or the defendant may be pardoned for reasons unrelated to innocence or errors of law, *e.g.*, in order to restore civil rights or to remove the stigma associated with a criminal conviction. Sentences resulting from such convictions are to be counted. However, expunged convictions are not counted. § 4A1.2(j).

*See also United States v. Stowe*, 989 F.2d 261, 263 (7th Cir.1993) (expunged convictions are not the same as convictions that are set aside). Because Griffin's Texas conviction was only set aside and not expunged, his sentence of one year's probation was properly counted in calculating his criminal history category.

■ Griffin also maintains that he was entitled to a downward departure under U.S.S.G. § 4A1.3 because his criminal history category overrepresents the seriousness of his criminal history. The claim is waived because at no point at sentencing or in his objections to the guideline calculations did Griffin phrase his objection as a motion to

depart downward under § 4A1.3. *See Covarrubias,* 65 F.3d at 1371. In any event, this court lacks jurisdiction to review a sentencing court's discretionary decision not to depart downward under § 4A1.3. *United States v. Hillsman,* 141 F.3d 777, 780 (7th Cir.1998). The only exception to this jurisdictional rule arises when the sentencing court's decision is the result of a mistaken belief that it lacked statutory authority to depart downward. *Id.; see also Covarrubias,* 65 F.3d at 1371. Upon our review of the sentencing transcript, there is no indication in the record that the sentencing court had the mistaken belief that it lacked authority to depart downward. Thus, Griffin's assertion that his criminal history category was calculated improperly fails.

## III. CONCLUSION

We conclude that the district court's denial of Griffin's motion to suppress was proper and that Griffin was well aware of the fact that there was cocaine in his vehicle. We also conclude that the district court did not commit clear error in enhancing Griffin's sentence under § 2D1.1(b)(1), refusing to apply § 3B1.2, and calculating Griffin's criminal history category.

AFFIRMED.