**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Julie P. SKOW, Defendant–Appellant.**

No. 02–3164.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 24, 2003.

Decided March 24, 2003.

Before BAUER, RIPPLE, and EVANS,
Circuit Judges.

ORDER

The only issue on this appeal is whether the district court correctly applied a 2–point obstruction of justice enhancement under U.S.S.G. § 3C1.1. We review *de novo* whether the court made the appropriate findings to support the enhancement, while its underlying findings of fact are reviewed only for clear error. *United States v. Owens*, 308 F.3d 791, 794 (7th Cir.2002).

Ordinarily, a challenge to an obstruction enhancement rests on a claim that no obstruction actually occurred. When the enhancement is based on a claim that a defendant intentionally lied in a material manner during court testimony under oath, the usual defense is that lies were never in fact presented. But this case is a bit different: the defendant concedes that she lied, but she alleges that her lies must be excused because she made them while "her capacity to perceive and relate the truth was diminished."

Julie Skow was indicted in March of 2001 for, among other things, possessing a precursor chemical, pseudoephedrine, which is used to make methamphetamine. She was free on bond while the charges were pending, but in May 2001 a pretrial services officer sought to revoke Skow's bond because she tested positive for using methamphetamine, contrary to her pledge not to do so while on release status awaiting trial. A hearing on the matter (which

as it turned out was joined with Skow's motion to suppress evidence) was held on May 22, 2001. And at this hearing, Skow told a bunch of fibs which formed the basis for the obstruction enhancement a year later when she pled guilty to one of the "pseudoephedrine" charges against her.

Skow's lies during the May 2001 hearing covered a lot of ground. Although analysis of a drug sweat patch she was required to wear showed that Skow ingested methamphetamine, she explained that she had not used the drug but tested positive only because she was having sex during the time with her boyfriend, who was a user. But a toxicologist at the chemical lab reported that the amount of tainted semen required to make the kind of positive reading Skow registered would have been impossible for her boyfriend, or any human being, to produce.

On a number of points, Skow directly contradicted her pretrial services officer, Tim Easker, when he reported what she had told him about her drug use. If she was telling the truth on these points, Easker would have been lying through his teeth when he reported the conversation to the court at the hearing.

Finally, Skow also clearly lied at the hearing when she testified about the details of a search at her home which, inappropriately named for her, was located in Luck, Wisconsin.

At sentencing, Skow offered, as we said, a "diminished capacity" defense to excuse her lies at the detention/suppression hearing, and she points to events after the hearing to bolster her claim. Skow was remanded to custody at the conclusion of the hearing, and a week later her attorney filed a motion to determine her competency. The court granted the motion, and in August, based on a report from a federal medical facility, it found that Skow was not competent to stand trial.

A second report, 5 months later, found that she was competent, and the proceedings resumed. She resolved the charges against her by pleading guilty to one of the counts in the indictment, and the others were dismissed. At sentencing, with the obstruction enhancement in place, Skow's guideline range was 30–37 months. She got 30. Without the enhancement, her range would have been 24–30 months. So, despite the fact that even if she's correct in contending that the enhancement should not have been applied, she could still get the same sentence if we return the case to the district court for a do-over. Nevertheless, we soldier on.

Skow argues on appeal, as she did before the district court, that her false testimony at the hearing was not willful—that she could not have intended to lie because she suffered from a diminished mental capacity when she lied at the hearing.

First, as to burden of proof, a point we were concerned about during oral argument, the government, by seeking the enhancement, has the obligation to prove that it should be applied. *United States v. Ewing*, 129 F.3d 430, 434 (7th Cir.1997). And its burden is only that of a preponderance of the evidence, it is not "beyond a reasonable doubt." *United States v. Ebbole*, 917 F.2d 1495 (7th Cir.1990).

A § 3C1.1 enhancement can be ordered whenever the preponderance of the evidence establishes that (1) a defendant provided false testimony under oath; (2) the false testimony was material; and (3) the defendant acted willfully, as opposed to acting out of confusion, mistake, or a faulty memory. *United States v. Griffin*, 310 F.3d 1017, 1023 (7th Cir.2002).

The gist of the defendant's present argument is that it was impossible for her to have acted "willfully" if she had a diminished mental capacity when she gave her

false testimony at the May 2001 hearing. To accept this argument, trial judges would have to excuse all defendants with a diminished mental capacity from the obligation to testify truthfully even if it was clear, under all the circumstances, that they seemed to know what they were doing. Looking at the totality of her testimony at the hearing, it seems clear that Skow knew what she was doing, for she only denied the existence of facts that would have moved the judge to revoke her bond and remand her to custody while her case was pending. That she denied absolutely all the incriminating evidence against her, but told the "truth" about everything else, supports the district court's conclusion that she acted willfully when she told her lies despite the fact that she may have had a diminished capacity. Hers was not the conduct of a confused or mistaken person. She also pointedly denied all the evidence that supported the legality of the search of her home. She followed, rather perfectly, a course to distance herself from anything connecting her to the incriminating evidence found in her home. If Skow was suffering from a madness, it was a madness with a method.

On top of this, the doctor who said she had a diminished mental condition at the May 2001 hearing did not, or could not, say that the condition *caused* Skow to provide false testimony. In fact, the doctor stated, in a supplemental report, "Finally, I continue to be unable to provide an opinion regarding Ms. Skow's specific motives for her testimony in May 2001. Her statements are consistent with the diagnoses previously provided, but other causes for her testimony, such as drug intoxication or self-serving interests cannot be completely ruled out."

Upon this record, we conclude that the district court did not err when it found, at the government's request by a preponderance of the evidence, that Skow acted willfully when she testified falsely about so many things during the May 2001 hearing. The obstruction enhancement, therefore, will not be vacated.

AFFIRMED.