In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2713

United States of America,

Plaintiff-Appellee,

v.

Timothy S. Jocic,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. IP 98-139-CR--S. Hugh Dillin, Judge.

Argued February 29, 2000--Decided March 22, 2000

Before Bauer, Cudahy, and Eschbach, Circuit Judges.

Bauer, Circuit Judge.  Timothy Jocic is appealing
his conviction for armed bank robbery in
violation of 18 U.S.C. sec. 2113(a), for which he
was sentenced to 66 months' imprisonment and five
years' supervised release. Jocic argues only that
he was coerced into driving the getaway car for
the robbery and that the government failed to
bear its burden of showing that he was acting
voluntarily.

Around 1:30 p.m. on September 15, 1998, Michael
Bradach entered an NBD Bank in Bloomington,
Indiana, and, armed with a nine millimeter
handgun, robbed two tellers of approximately
$23,000. The teller supervisor who testified at
the trial estimated that Bradach was in the bank
for two to three minutes. Upon leaving the bank,
Bradach entered the passenger side of his black
Jeep Cherokee, which was being driven by Jocic.
The jeep was backed into a parking space facing
an alley about 115 feet from the doors of the
bank and 55 feet from the doors of A.G. Edwards,
an investment company located across the alley
from the bank. Once Bradach got in, the jeep
immediately took off through the alley.

As the holdup began, a customer waiting in the
drive-through banking line observed the people
inside the bank put their hands in the air. The
customer said it took him fifteen to thirty

seconds to react, but then he drove next door to A.G. Edwards, parked his car, entered the offices, and directed the people there to call the police. After an employee called the police, the drive-through customer walked outside and saw the robber leave the bank. The customer observed that the driver of the jeep was wearing a hat or hood and dark glasses.

A number of A.G. Edwards employees also watched the robber leave the bank. One was talking to the 911 operator on her cell phone as she observed the robber cross the parking lot. Another watched the robber cross the parking lot and enter the front passenger door of the jeep, whose engine he heard running prior to the robber's arrival. This witness also heard the driver of the jeep, wearing a hooded sweatshirt pulled down around his face, tell the robber to "hurry up." Another bank customer waiting in her car nearby heard the jeep's driver tell the robber to "get in."

Phil Bryan, a Bloomington Police officer responding to the 911 calls, observed two males in a black jeep driving by the NBD Bank. Bryan drove his marked police car up behind the jeep and turned on his lights and sirens. The jeep did not stop, but instead raced off, reaching speeds of 50 miles per hour in a 30 mile per hour zone and ignoring stop signs and traffic lights. After other marked police cars joined in the pursuit, the jeep was forced to make a sharp turn at a T-intersection. The jeep failed to negotiate the turn and slid into the curb.

Both front doors opened and the driver and passenger fled the jeep simultaneously, running in opposite directions. The passenger, Bradach, carrying a handgun, ran north for a distance of about 50 feet. Bryan stopped his car and pursued him on foot. Confronted by police and ordered to drop the firearm, Bradach put the weapon in his mouth and fatally shot himself. Meanwhile the driver, Jocic, ran west on a sidewalk bordered by a chain link fence on one side and the street on the other. A second Bloomington police officer, Sgt. Mark Crouch, had been following Bryan in another marked police car. Crouch turned on his lights and sirens and drove two wheels of the car up onto the sidewalk alongside where Jocic was running. Jocic looked back at Crouch, but continued to run. Crouch then pinned Jocic against the fence with the left front fender of his patrol car, knocking Jocic up over the hood and onto the ground. There were approximately 65 yards between the abandoned jeep and the point where Crouch stopped Jocic. As Crouch then took Jocic into custody, he observed that Jocic was wearing a hooded sweatshirt tied fairly tight around his face and a pair of sunglasses. The

police recovered $23,000 in cash from the jeep, including the "bait" money from the NBD Bank, and a clip of nine millimeter ammunition from a pocket in the front passenger side door.

Within fifteen minutes after his arrest, Jocic gave a taped statement to the Bloomington police and the FBI at the Bloomington Police Department. Both the videotape and transcript of his statement were admitted at trial. After being given his Miranda rights and waiving them, Jocic stated that he was from Crown Point, Indiana, and was a junior at Indiana University. Then, before the interview proceeded beyond personal information, Jocic asked if Bradach was dead and the officers responded that he was. Jocic then stated that he and Bradach had graduated from separate high schools in the same year and did not become acquainted until a mutual friend introduced them about two months prior to the bank robbery. During that time Jocic and Bradach socialized on occasion.

According to Jocic, on the morning of the robbery, Bradach called him between 10 and 11 in the morning and asked to come over to Jocic's home. Jocic agreed, but told Bradach he had to go to class at 11:15. When Bradach arrived at 11:25, he was dressed all in black and was carrying a backpack from which he pulled a nine millimeter handgun. Bradach had reserved a flight for 5:40 that evening to visit a girlfriend in South Carolina, but he did not have the money to pay for the trip. He told Jocic he needed his help to get the money to go to South Carolina, then pointed the gun at him and said "You're my driver" and "I just need ten minutes of your time." Bradach repeated that he needed some money, and talked of robbing a bank, a convenience store, or a gas station. Jocic was shocked by Bradach's behavior and did not know whether Bradach was joking or not.

Prior to leaving Jocic's house, Bradach permitted Jocic to call and cancel a counseling appointment, and, since Jocic had just woken up, Bradach allowed him to get dressed. Jocic then left his house with Bradach because he was afraid "he was gonna shoot me if I said no." When they got to Bradach's jeep, Bradach drove and Jocic rode in the passenger seat. Bradach eventually asked Jocic if he knew where there was a "good bank," and Jocic replied that the NBD Bank where he had an account was nearby. They arrived at the bank and Bradach circled around it once, then pulled the jeep into a parking space facing the alley. Bradach placed the gun in his lap pointed at Jocic as he put on a pair of plastic gloves. He had two clips for the gun, one of which he handed to Jocic and told him to place it in his side of the passenger door. Jocic did as he was

instructed. Finally, Bradach put on a black hat and told Jocic "I'm goin'" and "You better be in the driver's seat when I get back." Bradach added "I don't care," "I'll kill anyone" and "If anyone steps up, they're goin' down." Then Bradach exited the jeep, carrying his backpack and the gun. It seemed to Jocic that the time Bradach was gone was "quick."

When Bradach returned, he jumped in the passenger side of the jeep, and said "I got a bag of money" and "Go, go, go, go." Bradach was still carrying the gun. As soon as Jocic drove the jeep out of the parking lot, he saw a police car head toward them, then execute a U-turn and begin to chase them. Bradach kept saying "Go, go, go, go" and Jocic did not know what to do. During the car chase, Bradach told Jocic "I'm not going to jail" and "I'll kill myself before I end up goin' to jail." When the jeep hit the curb and stopped, Jocic jumped out because he "didn't want to get shot." When asked if he was afraid that the police might shoot him, Jocic responded that he was not. Jocic ran because he was afraid Bradach would shoot him in the back.

During further questioning in his interview, Jocic stated that he owned a police scanner and had loaned it to Bradach on occasion. About thirty minutes following the end of the taped interview, FBI agent Gary Dunn spoke again with Jocic, inquiring why he did not leave the parking lot while Bradach robbed the bank. Jocic now claimed that Bradach had taken the keys to the jeep into the bank with him. In a final conversation at the Police Department, Jocic told Dunn that Bradach had instructed him on what to wear the day of the robbery. On cross-examination at the trial, Jocic testified that he'd had several phone conversations with Bradach on September 14, 1998, the day before the robbery. When government counsel asked Jocic why he just didn't drive the jeep out of the parking lot while Bradach was in the bank and call the police, Jocic answered "There is a lot of things I wish I could have done, should have done. Could have, would have, but at this time I was completely paralyzed with fear."

Jocic was indicted for both bank robbery and carrying a firearm during the commission of a felony, although the government moved to dismiss the firearm count prior to trial. Following a two-day trial, a jury found Jocic guilty of bank robbery. The court granted Jocic's motion for a new trial, and conducted a two-day bench trial. Ultimately the court, like the jury before it, rejected Jocic's defense of coercion and found him guilty of bank robbery. The district court sentenced Jocic to 66 months' imprisonment, five

years' supervised release, and payment of a $2,000 fine. Jocic appeals, arguing only that there was insufficient evidence to prove beyond a reasonable doubt that he was not coerced into robbing the bank.

This court's review of the sufficiency of evidence is extremely limited. "We review challenges to the sufficiency of the evidence by viewing the evidence in the light most favorable to the prosecution and asking whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Balint, Nos. 98-3130, 98-3143, 2000 WL 15013 at *5 (7th Cir. Jan. 11, 2000). Thus, if any rational trier of fact could have found that the government proved Jocic had not met one or more elements of the coercion defense, the judgment should be affirmed.

A defendant presenting the defense of coercion is required to show that he reasonably feared immediate death or serious bodily harm unless he committed the criminal act with which he was charged, and that there was no reasonable opportunity to refuse to commit the offense and to avoid the threatened injury. United States v. Crowder, 36 F.3d 691, 696 (7th Cir 1994); United States v. Toney, 27 F.3d 1245, 1248, 1252 (7th Cir. 1994); see also United States v. Bailey, 444 U.S. 394, 410 (1980) ("Under any definition of these defenses [duress and necessity] one principle remains constant: if there was a reasonable, legal alternative to violating the law, 'a chance both to refuse to do the criminal act and also to avoid the threatened harm,' the defenses will fail."). Jocic testified on his own behalf at trial in support of his claim that his participation in the robbery was the result of Bradach's coercion. The government thus was required to disprove coercion beyond a reasonable doubt. Crowder, 36 F.3d at 696; Toney, 27 F.3d at 1248, 1252. It could do so by either "proving that the defendant's fear or perception of serious bodily harm was unreasonable" or "by proving that the defendant had a reasonable opportunity to avoid the offense." Toney, 27 F.3d at 1252. In Jocic's case, the district court found that the government had done both.

In examining the truth of Jocic's claim of coercion, the district court questioned why he did not escape when he had the chance. Despite Jocic's assertion that Bradach had taken the car keys into the bank with him, the court found that Bradach had left Jocic in the car with the engine running while Bradach robbed the bank. Although estimates of the length of time Bradach was in the bank vary, even the "quick" duration Jocic

described was sufficient time for him to drive off. Jocic's claim that he was "paralyzed" with fear does not fully excuse his failure to escape. The witness parked in the bank's drive-through lane also reported an initial state of shock when he realized there was a robbery in progress, yet he managed to recover, drive to A.G. Edwards, enter the office, instruct an employee to call 911, and go back outside to the parking lot in time to watch Bradach leaving the bank. Clearly, Jocic also had time to do the same. Moreover, as the government points out on appeal, even if the car were not running, Jocic only had to sprint 55 feet to the door of A.G. Edwards where several people were standing around, one of them using a cell phone. Jocic easily sprinted approximately 65 yards in attempting to elude the police later that day. Accordingly, the court rationally concluded that Jocic did have a reasonable opportunity to escape and failed to use it.

Additionally, the court noted the various inconsistencies in Jocic's account of his relationship with Bradach. Although Jocic based his defense in part on the claim that he did not know Bradach very well, the court highlighted the fact that he and Bradach called each other seven times the day before the robbery. The court also focused on the fact that Jocic originally stated that he had loaned his police scanner to Bradach "a couple of times" and that Bradach only kept it "for a day or two." But once the police informed Jocic that they suspected Bradach in other robberies, Jocic altered his statement to the effect that Bradach had only returned the scanner a couple of days earlier after borrowing it for a week and a half. Consequently, the court did not credit Jocic's testimony regarding his relationship to Bradach and the interaction between them on the day of the robbery. When a defendant decides to testify and deny the charges against him and the finder of fact thinks he is lying, his untruthful testimony becomes evidence of guilt to add to the other evidence. United States v. Zafiro, 945 F.2d 881, 888 (7th Cir. 1991). Thus, Jocic's own statements contradict his assertion that he was forced to assist in the robbery for fear of his life. Because there is sufficient evidence to support the district court's finding that Jocic was not coerced into aiding Bradach in the bank robbery, the judgment is

AFFIRMED.