In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-1520

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DELBERT L. CHATMON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 4:99CR40085-001—**David R. Herndon**, *Judge.*

ARGUED FEBRUARY 14, 2003—DECIDED APRIL 4, 2003

Before FLAUM, *Chief Judge*, and DIANE P. WOOD and
EVANS, *Circuit Judges.*

FLAUM, *Chief Judge.* After a jury trial, Delbert Chatmon
was convicted of conspiracy to distribute more than 50
grams of crack cocaine and was sentenced to life imprison-
ment. He appeals only his sentence. We affirm.

## I. BACKGROUND

Chatmon began distributing crack cocaine in Mt. Vernon,
Illinois, during the summer of 1998. In April 1999 Chat-
mon and coconspirators Jermaine Barnett, Paul Bolling,
and Ashanti Watkins drove to Kansas City to purchase

approximately one kilogram of powder cocaine because Mt. Vernon was "dry" at the time. Another coconspirator, Anthony Moore, did not make the trip but did contribute $10,000, with the expectation that he would get one half of the kilogram.

As Chatmon and the others returned to Mt. Vernon, police officers attempted to stop their car. A chase ensued, ending at Bolling's house, at which point Chatmon threw a package out of the car and into the yard. The package was later determined to contain 988.65 grams of powder cocaine. A search of the car also turned up a Pyrex dish, two Pyrex measuring cups, and a box of baking soda.

After their arrests Barnett, Bolling, Moore, and Watkins all agreed to testify against Chatmon in exchange for a plea agreement. According to Barnett's testimony, which is of particular relevance to this appeal, Chatmon told him initially that half the kilogram of powder cocaine was supposed to go to Moore, but prior to arrest Chatmon changed course and decided that he wanted to cook all of the cocaine into crack. They therefore stopped at a Kroger store to buy Pyrex containers and a box of baking soda. FBI agent Greg Holston testified that the amount of baking soda purchased was sufficient to cook over one kilogram of powder cocaine into crack cocaine.

Barnett further testified that in November 1998 he was at the house of Kim Bolling, Chatmon's girlfriend, and saw Chatmon cooking crack in the kitchen. At that time Barnett also observed a black 9mm handgun on Kim Bolling's nightstand, which was in the bedroom that she shared with Chatmon.

Steve Nevings was Chatmon's cellmate at the Jefferson County Jail, where Chatmon was held temporarily following his arrest. Nevings testified at trial that Chatman told him "to tell Jermaine [Barnett] that he know where he stay, and if he say something to you all that he's going

to send some friends from Kansas to 'F' up his family." At the time Chatmon made this statement, Barnett and Paul Bolling were only ten feet away. Barnett testified that not only did he hear Chatmon make the comment, but a week later, when Barnett passed by Chatmon's cell, Chatmon told him not to forget what he had said.

The jury found Chatmon guilty and returned a special verdict finding that the offense involved more than 50 grams of crack cocaine. The probation officer then recommended holding Chatmon responsible for over 1.5 kilograms of crack cocaine, which included the 988.65 grams of powder cocaine that were recovered from Paul Bolling's yard on the day of the arrest. Chatmon objected to this determination, claiming that only half of the 988.65 grams should be counted as crack because the other half was to be delivered to Moore, who, according to Chatmon, dealt only in powder cocaine. In response the government conceded that the original plan was that only half of the purchase would be cooked into crack but asserted, relying on Barnett's trial testimony, that the plan had changed just prior to arrest. The government also submitted a number of proffer statements showing that Chatmon could be held accountable for an additional 3500 grams of crack cocaine.

After hearing extended arguments from both parties, the district court agreed with the government that Chatmon was responsible for over 1.5 kilograms of crack cocaine, making clear that its finding was based on the trial testimony and not the proffer statements:

> There is absolutely no question in the court's mind that the amount of cocaine base or crack cocaine in this case exceeds 1.5 kilograms. The court relies upon the trial testimony in this matter for this determination. . . . [I]n doing a quick bit of math with respect to the trial testimony alone, I can find at least 1538 grams of crack

cocaine. If you add in the proffers, there's in excess of 2300 grams from the proffers alone. So it would appear that we have well in excess of 3900 grams of crack cocaine in this case or 3.9 kilograms in excess thereof. But in any event, we're well into the range that puts us at the upper level with respect to the base offense level in this case, and that is a 38.

The court then enhanced Chatmon's offense level by 8 points for possession of a firearm, obstruction of justice, use of a minor, and leadership role. With a criminal history category of III, this yielded a guidelines sentence of life imprisonment.

## II. DISCUSSION

Chatmon challenges three aspects of his sentence calculation: (1) the drug quantity determination, (2) the enhancement for obstruction of justice, and (3) the enhancement for possession of a firearm. As Chatmon conceded at oral argument, he must prevail on at least two of these three challenges in order for there to be any effect on his guidelines range.

### A. Drug Quantity

Our review of a sentencing court's drug quantity determination is for clear error, which exists only if we are left with a "definite and firm conviction that a mistake has been committed." *United States v. Gutierrez-Herrera*, 293 F.3d 373, 375-76 (7th Cir. 2002) (quotations omitted). Here, the district court concluded that the trial testimony alone established that Chatmon should be held responsible for over 1.5 kilograms of crack cocaine. Chatmon challenges this finding, reasserting his position that only half of the 988.65 grams recovered at the time of arrest should be counted as crack; the other half, he says, should

be counted as powder because the plan was to give it to Moore. We reject this argument because the district court's decision to include all 988.65 grams as crack cocaine is adequately supported by Barnett's trial testimony. Specifically, the following exchange occurred between the prosecutor and Barnett:

Q: What did Mr. Chatmon want to do with those Pyrex glasses and with that baking soda?

A: Cook the powder cocaine into crack cocaine.

Q: The entire kilo?

A: Yes, sir.

Barnett repeated this information on cross-examination.

Chatmon contends that Barnett's testimony was internally inconsistent because he stated both "that Chatmon was going to cook the entire kilogram into crack . . . and that Chatmon told him Moore was going to get half of the kilogram as powder." These statements do not strike us as necessarily inconsistent, however; rather, they seem in line with the government's position that, though the original plan was to give half the purchase to Moore, Chatmon scuttled that plan just prior to arrest. Moreover, even if one could find some internal inconsistency, it is not so "blatant" that it would render the district court's reliance on Barnett's testimony clearly erroneous. *See United States v. Clay*, 37 F.3d 338, 344 (7th Cir. 1994) (witness's testimony was "noticeably not characterized by the type of blatant internal inconsistency relating to the degree of a defendant's drug involvement which would require attention and resolution before the court could depend on only one aspect of the account in necessary derogation of another"). We also note that there is some question whether Moore might not have cooked his half of the powder cocaine into crack cocaine anyway. Though Moore stated in his proffer that he dealt exclusively in

powder, he testified later at trial that he "was dealing in cocaine powder plus crack cocaine."

Chatmon also maintains that the district court failed to give adequate reasoning for why it was rejecting his objections to the drug quantity calculation; this failure, he says, mandates automatic remand under Fed. R. Crim. P. 32(c)(1). In response the government asserts that Chatmon forfeited this point because he did not specifically ask the court to give further explanation under Rule 32(c)(1). We doubt whether this is right, however, since Rule 32(c)(1) imposes an *affirmative* obligation on the sentencing court to make "[f]or each matter controverted . . . either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing." *Cf. United States v. Li*, 115 F.3d 125, 132 n.3 (2d Cir. 1997) (noting intercircuit conflict regarding whether defendant should be held to have forfeited his right to allocution if he failed to request that opportunity, given that Rule 32(c)(3)(C) imposes an affirmative obligation on the sentencing court to invite allocution).

This is not an issue that we need decide, however, because Chatmon's argument fails under any standard of review. All that is required for the district court to comply with its obligation under Rule 32(c)(1) is that it give enough reasoning to allow the reviewing court to evaluate its decision. *United States v. Taylor*, 135 F.3d 478, 483 (7th Cir. 1998). Thus, in *Taylor* we found the district court's statement that it "adopt[ed] the factual findings and guideline application in the presentence report" to be sufficient under the Rule. Similarly here, the district court's explanation, after hearing extended argument from the parties, that it "relie[d] on the trial testimony in this matter for . . . determination [of drug quantity]" is adequate to allow for appellate review, and so we need not remand for further findings.

*B. Obstruction of Justice*

The district court imposed a two-level obstruction enhancement under U.S.S.G. § 3C1.1 based on "directions by Mr. Chatmon for the defendants in this case to flee[,] an attempt by him to hide the drugs by throwing them away from the car . . . [and because he] threatened, and used others to threaten, witnesses in this case." Chatmon contends that this was clear error because an obstruction enhancement cannot be based on flight from arrest (in this case Chatmon told Bolling to "step on the gas") or on attempts to conceal evidence contemporaneously with arrest. Chatmon is right that the application notes to § 3C1.1 exclude such conduct from the reach of the guideline, U.S.S.G. § 3C1.1, comment. (n.4(d), 5(d)), but still, the district court did not commit clear error because Chatmon's conduct of threatening witnesses provides, by itself, a basis for the enhancement, *id.*, comment. (n.4(a)). Chatmon does not dispute the statement attributed to him—that he would "send some friends from Kansas to 'F' up [Barnett's] family" if he talked to the authorities—but claims that it was merely "jailhouse bravado," not a threat. As Chatmon acknowledges, however, we rejected the same "jail talk" argument in *United States v. Henderson*, 58 F.3d 1145 (7th Cir. 1995), holding that whether a defendant's conduct "evinced the requisite intent or was merely false bravado was a credibility determination left to the sound discretion of the sentencing court." *Id.* at 1154. Chatmon tries to distinguish *Henderson* by asserting that the district court here failed to find "the requisite specific intent to obstruct justice." We disagree. Though the court did not actually say the words "specific intent," it expressly found that "there [was] reliable and reasonable testimony . . . that Mr. Chatmon threatened, and used others to threaten, witnesses in this case."

*C. Possession of Firearms*

In support of this enhancement, the government submitted various pieces of hearsay evidence, such as a video interview and a number of proffer statements. The parties spend much of their briefs discussing whether the district court erred in admitting this evidence, whether the court gave adequate reasoning for its decision, and whether Chatmon forfeited any argument that the court should have made further findings because he did not ask the court to do so below.

We do not find any of these issues relevant, however, because the district court did not rely on the hearsay evidence as a basis for the enhancement. Rather, the court based its decision exclusively on the trial testimony:

> The court does find that the testimony of the witnesses was reliable with respect to the possession of a firearm during the commission of this offense. While I think it's interesting that it wasn't in his possession at the time of the arrest, I don't think that takes away from the testimony of the others that it was with Mr. Chatmon at all other times and was seen in the vicinity and next to the money and drugs and in very close proximity to the kitchen where drugs were being cooked.

Evidently, the court was referring to Barnett's testimony that he saw Chatmon cooking crack in Kim Bolling's kitchen with a black 9mm handgun nearby, and Ashanti Watkins's testimony that Chatmon "generally" carried a black handgun, about 8 to 10 inches long, throughout the three years she had known him.

The government asserts that this trial testimony alone "clearly established possession of a firearm at a specific time within the charged conspiracy." Though this is perhaps not quite the lock that the government makes it out to be, ultimately, there is enough evidence to infer constructive possession. It is true that "mere proximity" to

a weapon does not establish possession, *United States v. Harris*, 230 F.3d 1054, 1057 (7th Cir. 2000), but in this case there is circumstantial evidence demonstrating control: the weapon was nearby and in plain view, and was located in the bedroom that Kim Bolling shared with Chatmon. *See United States v. Starks*, 309 F.3d 1017, 1026-27 (7th Cir. 2002) (upholding firearms enhancement where defendant was found within reach of a loaded gun and there was circumstantial evidence establishing that he was aware of the presence of guns). Also, though Chatmon is right that Watkins's testimony did not link him to any drug activity *per se*, the fact that he usually carried a gun at the least lends credence to Barnett's testimony.

## III. CONCLUSION

As we have said, Chatmon needed to prevail on at least two of his three challenges in order for his guidelines range to be any different. He has not succeeded on any of them, and so the judgment of the district court is AFFIRMED.

A true Copy:

Teste:

_____

*Clerk of the United States Court of Appeals for the Seventh Circuit*