In the

# United States Court of Appeals

### For the Seventh Circuit

No. 14-3348

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

SALIOU MBAYE,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11 CR 800 — **Milton I. Shadur**, *Judge.*

ARGUED DECEMBER 7, 2015 — DECIDED JUNE 28, 2016

Before FLAUM, WILLIAMS, and SYKES, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Saliou Mbaye was charged with
bank fraud and mail fraud. The government alleged that he
and three co-defendants ran a mortgage-fraud scheme that
"earned" them $600,000. At trial, Mbaye testified and admit-
ted to his conduct and to the existence of a scheme, but
claimed that he lacked the requisite guilty state of mind. He

said that he was duped into helping out his co-defendants, who were the only true fraudsters. The jury didn't believe him, so he was convicted.

Mbaye contends on appeal that the evidence of his guilty mind was legally insufficient, but we disagree. The adverse testimony of two of his co-defendants, along with circumstantial evidence that Mbaye was a knowing participant in the scheme, was enough to support his conviction. He also challenges the sentencing judge's finding that he obstructed justice by lying under oath about material facts. But the judge's finding was adequately explained and is supported by the record. Finally, Mbaye argues that his sentence is substantively unreasonable, but again we disagree. We affirm his conviction and sentence.

## I. BACKGROUND

The government contended that Mbaye and his three co-defendants ran a mortgage-fraud scheme. The general structure of the scheme can be explained by example: a homeowner wants to sell her house for $250,000 but has difficulty selling at that price. A fraudster agrees to buy the house for $400,000 if the seller gives the extra $150,000 right back to the fraudster. The fraudster borrows the purchase money from a bank by lying—he convinces the bank both that the property is actually worth $400,000 and that he has the ability to pay back that amount. The bank has been defrauded. It was convinced by lies to hand out $400,000 and in return it received a security interest worth only $250,000 (or less, since the seller initially had trouble selling at that price). An additional wrinkle: the fraudster doesn't take out loans in his own name—he finds "straw" purchasers willing to let their names be used, for a small fee.

That example roughly describes the transactions in Mbaye's case. The exact details are unnecessary because Mbaye admits to all of his conduct and admits that the scheme was fraudulent. He contends only that his co-defendants were the fraudsters and he was duped into helping them without knowing they were committing fraud. Because fraud requires a culpable state of mind, he argued at trial that he was innocent and he argues on appeal that the evidence of his guilt was insufficient.

The jury rejected his story and convicted him. At sentencing, the judge found that Mbaye had obstructed justice by lying about material facts. That finding increased Mbaye's offense level and accordingly his Guidelines-recommended sentence. He argues on appeal that the judge's finding was erroneous and insufficiently explained.

With the obstruction-of-justice enhancement, the Guidelines recommended a sentence between 70 and 87 months. The judge imposed one of 35 months, which Mbaye argues is substantively unreasonable because it is too long.

## II. ANALYSIS

### A. Evidence Sufficient to Convict

In analyzing Mbaye's challenge to the sufficiency of the evidence, we view the evidence "in the light most favorable to the government" and we will "overturn the verdict only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *United States v. Morales*, 655 F.3d 608, 634 (7th Cir. 2011) (internal citation and quotation marks omitted). We

do not reweigh the evidence or second-guess the jury's credibility determinations. *United States v. Williams*, 553 F.3d 1073, 1080 (7th Cir. 2009) (internal citation omitted).

The government contended that Mbaye's role in the mortgage-fraud scheme was to launder the money. Mbaye created a shell company named Veracity Enterprises Corporation and opened a corporate bank account. Mbaye deposited the profits from the scheme into that account and then promptly paid that money out to himself and his co-defendants, writing "administrative duties" on the memo line of the corporate checks. Mbaye, as "CEO" of Veracity, signed false documents used to obtain loans and close sales, and his phone number was on some of those documents, suggesting he stood ready to verify the false information. His share of the proceeds was more than $80,000.

Mbaye admits all those facts but says he didn't know anything untoward was afoot. He testified that he was merely helping a childhood friend. The friend was going through a divorce and didn't want to put his money in the bank account he shared with his soon-to-be ex-wife, so Mbaye handled the friend's money as a favor, and the friend paid Mbaye $80,000 as a "thank you". The jury rejected this story. Mbaye says the evidence was insufficient to allow that.

We have described an appellant's challenge to the sufficiency of the evidence as "a nearly insurmountable hurdle," *United States v. Taylor*, 637 F.3d 812, 815 (7th Cir. 2011), and Mbaye does not come close to clearing it. For starters, his story was implausible, which the jury could weigh against him. *United States v. Jocic*, 207 F.3d 889, 893 (7th Cir. 2000) (if the "defendant decides to testify and deny the charges against him and the finder of fact thinks he is lying, his untruthful

testimony becomes evidence of guilt to add to the other evidence"); *United States v. Williams*, 136 F.3d 1166, 1168 (7th Cir. 1998) (rejecting sufficiency challenge in part because defendant's testimony "reek[ed] of implausibility").

The government presented further evidence of Mbaye's guilt. For example, he didn't report the $80,000 on his tax returns, and when he was interviewed by investigators, he lied. *See United States v. Whiteagle*, 759 F.3d 734, 757–58 (7th Cir. 2014) (false statements to law enforcement can be probative of guilt). Most incriminating of all, two of his co-defendants testified against him, saying he was a knowing participant in the scheme. Mbaye says those witnesses were biased because they testified in exchange for the government's agreement to recommend they receive lenient sentences. But that's an argument for the jury, not this court. *United States v. Harris*, 791 F.3d 772, 779 (7th Cir. 2015); *United States v. Bailey*, 510 F.3d 726, 734 (7th Cir. 2007). Indeed, the argument was made to the jury and the jury rejected it, as it was entitled to do. The evidence—including the co-defendants' testimony, the circumstantial evidence, and Mbaye's implausible story—sufficiently supported the jury's verdict.

### B. No Error in Finding Mbaye Obstructed Justice

Mbaye argues that the sentencing judge erred by applying U.S.S.G. § 3C1.1, which adds two points to the offense level if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the … prosecution … of the instant offense of conviction." We review de novo the adequacy of the sentencing judge's factual findings. *United States v. Chychula*, 757 F.3d 615, 619 (7th Cir. 2014). We review the correctness of those findings for clear error and the determination that the facts support the

enhancement de novo. *United States v. Pellmann*, 668 F.3d 918, 926 (7th Cir. 2012).

The enhancement applies if a defendant takes the stand and "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94 (1993). Because "inaccurate testimony … may result from confusion, mistake, or faulty memory, … not all inaccurate testimony" warrants the enhancement. U.S.S.G. § 3C1.1, App. Note 2. So when a defendant objects to the enhancement, the "district court must review the evidence and make independent findings necessary to establish" perjury. *Dunnigan*, 507 U.S. at 95. "[T]he district court *should* make a finding as to all the factual predicates necessary for a finding of perjury: false testimony, materiality, and willful intent," but explicit findings on each element "are not *necessary* if the court makes a finding that encompasses all of the factual predicates …." *Chychula*, 757 F.3d at 619 (emphasis added) (internal citation and quotation marks omitted); *Dunnigan*, 507 U.S. at 95.

Mbaye argues that he did not commit perjury because he told the truth. We easily reject that argument because it asks us to reweigh the evidence and overturn both the judge's and the jury's credibility determinations, which we do not do. *United States v. Taylor*, 701 F.3d 1166, 1173 (7th Cir. 2012).

Mbaye next argues that the judge inadequately discussed whether the false testimony was *willful*. Not so. The judge explicitly found that Mbaye *lied*—he didn't testify inaccurately due to confusion, mistake, or faulty memory. *See Chychula*, 757 F.3d at 620–61 (willfulness finding adequate if judge finds the defendant "lied"); *United States v. Johnson*, 680 F.3d 966, 982

(7th Cir. 2012) (same). The judge repeatedly stated that Mbaye "chose" to testify the way that he did, and doing so revealed "a deep character flaw." The judge stated that Mbaye "depart[ed] sharply from the truth, depart[ed] so sharply that to characterize it as perjury would not be a mislabel." The judge gave a specific example: Mbaye wrote "administrative duties" on the memo line of corporate checks used to pay himself and his co-defendants. He testified that he did so to reflect *his own* "administrative" task of writing the check, as opposed to the more common (if not universal) use of a memo line—to say why *the recipient* is being paid. The judge found that story to be willfully false, calling it "nonsense." There is no doubt that the judge found Mbaye's testimony was willfully false, not a mistake.

A finding of willfulness makes sense in this case because there is no reasonable likelihood that Mbaye's far-fetched story was the result of "confusion, mistake, or faulty memory." *Dunnigan*, 507 U.S. at 94; *see United States v. Anderson*, 580 F.3d 639, 648–49 (7th Cir. 2009) (affirming enhancement where the defendant "willfully obstructed justice by falsely denying any knowledge of the criminal nature of the enterprise"). The judge made an explicit finding of willfulness and did not clearly err in doing so.

Strangely, Mbaye does not raise the third factual predicate of perjury: materiality. That's strange because materiality is the one predicate that the judge *did not* explicitly address. The judge's error is harmless if the record would clearly have supported a finding of materiality. *Chychula*, 757 F.3d at 621. "[A] matter is material if it concerns information that, if believed, would tend to influence or affect the issue under determination." *United States v. Riney*, 742 F.3d 785, 790 (7th Cir. 2014)

(quoting U.S.S.G. § 3C1.1, App. Note. 6). Mbaye has not made a materiality argument and in any event his testimony was material. For example, the government argued that Veracity Enterprises Corporation had no operations, so the fact that Mbaye held himself out as the "CEO" and wrote "administrative duties" on the corporate checks showed that he was trying to disguise the source and nature of the payments. If the jury believed Mbaye's testimony—that "administrative duties" was not active concealment, but an accurate description of Mbaye's act in writing the check—it would have weakened the government's case. In sum, we find no reversible error concerning the obstruction-of-justice enhancement.

### C.  No Error in Mbaye's Sentence

Mbaye's final challenge is to his sentence. "We review a district court's choice of sentence in two steps. First, we assess de novo whether the court followed proper procedures. If the decision below is procedurally sound, then we ask whether the resulting sentence is substantively reasonable." *United States v. Warner*, 792 F.3d 847, 855 (7th Cir. 2015) (internal citations omitted); *see also United States v. Gall*, 552 U.S. 38, 51 (2008). In reviewing for substantive reasonableness, we apply "a deferential abuse of discretion standard." *Warner*, 792 F.3d at 856. "A below-guidelines sentence, like a within-guidelines one, is presumed reasonable against a defendant's challenge that it is too high." *United States v. Poetz*, 582 F.3d 835, 837 (7th Cir. 2009).

Mbaye argues that his sentence should have been lower because, though he was convicted of both mail fraud and bank fraud, the government could have chosen to prosecute him *only* for mail fraud, in which case no mandatory minimum would have applied. The argument is factually wrong

and legally frivolous. Factually, no minimum applied and there is no indication that the judge thought otherwise. Legally, a defendant has no right to be charged with only the least serious crime that fits his conduct. A defendant who beats someone to death has no right to be charged with only simple battery, rather than homicide. We do not suggest Mbaye did anything *that* serious, but his argument is of the same form and is no less misguided.

Finally, Mbaye argues that his positive contributions to his community—which the record reveals were substantial—warranted a non-custodial sentence. But the judge took those contributions into account and sentenced Mbaye to half of the low end of the Guidelines range. That sentence is presumptively reasonable on appeal and Mbaye has not overcome the presumption.

### III. CONCLUSION

We AFFIRM Mbaye's conviction and sentence.