NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued March 1, 2017
Decided March 6, 2017

**Before**

RICHARD A. POSNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 16-2389

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| v. | No. 14 CR 543-9 |
| RICARDO HERNANDEZ, *Defendant-Appellant*. | Amy J. St. Eve, *Judge*. |

**O R D E R**

A jury convicted Ricardo Hernandez of one count of conspiring to distribute controlled substances and two counts of using a cell phone to facilitate a drug-trafficking offense. 21 U.S.C. §§ 846, 843(b). On appeal he argues only that the government introduced insufficient evidence at trial to support those convictions. Because the government in fact introduced overwhelming evidence of Hernandez's guilt, we affirm the district court's judgment.

After a two-year investigation, federal agents arrested more than two dozen individuals, including Hernandez, who were involved in trafficking multiple kilograms of cocaine, heroin, and marijuana in Illinois and Michigan. About an hour after his

arrest, Hernandez received *Miranda* warnings and confessed during a videotaped interview that from 2012 to 2013, he worked as a drug courier for Balmore Urbano, a mid-level dealer who was his cousin's boyfriend. He said that Urbano paid him $100 for each "brick" of heroin or cocaine he picked up from suppliers and delivered to Urbano. Hernandez explained that he cut off contact with Urbano around November 2013 when Chicago police arrested Hernandez with a small amount of marijuana.

A grand jury indicted Hernandez and several others for various drug offenses. Hernandez faced charges of conspiring to distribute controlled substances, possessing cocaine with intent to distribute (on September 19, 2013), and two counts of using a phone to further a drug-trafficking offense (on September 25 and 26, 2013).

The case proceeded to trial, and one of Urbano's suppliers, Jorge Sanchez, testified against Hernandez, as did two agents who conducted surveillance of Hernandez, Urbano, and Sanchez. The government bolstered this testimony not only with Hernandez's videotaped confession but also with wiretapped conversations and text messages from Hernandez, Urbano, and Sanchez.

The government's case focused on two specific drug deals, the first of which occurred on September 19, 2013. An agent testified that on that day he saw Hernandez, Urbano, and Sanchez meet at a taquería in Cicero, Illinois. The agent further testified that he saw the three leave the restaurant together and walk to their vehicles. Although the agent did not see any drugs exchange hands, Sanchez testified that Hernandez retrieved from Sanchez's car a bag containing a kilogram of cocaine that Urbano had agreed to buy for $32,000.

The government also introduced intercepted communications showing that over the next several months, Hernandez assisted Urbano in trying to obtain more cocaine from Sanchez. On September 25, 2013, Hernandez, at Urbano's direction, called Sanchez to arrange a time to meet to pick up a shipment. But Sanchez—using coded language— told Hernandez that he had not heard from his suppliers and would have to call Hernandez back. The next day Sanchez called Hernandez and informed him that the "store" was out of "pants," i.e., that his suppliers were temporarily out of cocaine. According to Sanchez, Hernandez eventually delivered a kilogram of cocaine to Urbano in November 2013, but Hernandez returned the cocaine to Sanchez when Urbano expressed dissatisfaction with its quality.

The only evidence Hernandez presented in rebuttal was his own testimony during which he insisted that he did not learn about Urbano's drug-trafficking activities until 2014—several months after he stopped working for Urbano but before his arrest by federal agents. He admitted that Urbano had paid him to drive him around, but denied that he ever delivered drugs for Urbano. He admitted that he had been present for the meeting between Urbano and Sanchez in September 2013, but denied hearing or seeing anything about drugs during the meeting. And he admitted that he had texted and called Sanchez at Urbano's direction, but denied that he knew that Sanchez had been referring to cocaine when he spoke of "pants" during those communications. As for his videotaped confession, Hernandez explained that he had lied to the agents about working as Urbano's drug courier because he was "nervous" during the interview and believed he could make things better for himself by telling the agents what he thought they wanted to hear.

The jury convicted Hernandez on the conspiracy count and the cell phone counts, but acquitted him on the substantive possession count. Hernandez then moved for a judgment of acquittal, arguing that the government introduced insufficient evidence to show that he was a member of a conspiracy to distribute drugs and that without a valid conspiracy, the cell-phone convictions must also fail. The district court denied the motion and sentenced Hernandez to 42 months' imprisonment.

In this court Hernandez renews his contention that the government introduced insufficient evidence to sustain his convictions. He concedes that the record establishes that "Sanchez sold drugs to Urbano" and that Hernandez used a phone to communicate with Sanchez on the dates alleged in the indictment, yet he insists that "[t]he evidence of Hernandez's involvement in the 'conspiracy' and use of the phone is limited."

Although Hernandez characterizes his argument as a challenge to the sufficiency of the evidence, it reads more like an invitation to "reweigh the evidence or second-guess the jury's credibility determinations," something we cannot do. *United States v. Mbaye*, 827 F.3d 617, 620 (7th Cir. 2016). Rather, we will overturn a conviction for insufficiency of the evidence only "when, viewed in the light most favorable to the government, 'the record is devoid of evidence' from which a reasonable jury could find the defendant guilty beyond a reasonable doubt.'' *United States v. Sewell*, 780 F.3d 839, 847 (7th Cir. 2015) (quoting *United States v. Campbell*, 770 F.3d 556, 568 (7th Cir. 2014)). Hernandez has fallen far short of that "nearly insurmountable" burden. *United States v. Dessart*, 823 F.3d 395, 403 (7th Cir. 2016) (quoting *United States v. Warren*, 593 F.3d 540, 546 (7th Cir. 2010)).

As detailed above, the government produced a mountain of evidence showing that Hernandez conspired with Urbano to distribute drugs and used a cell phone to further that conspiracy. This evidence included Hernandez's videotaped statement in which he admitted that he worked as Urbano's drug courier, Sanchez's testimony that he gave Hernandez packages of drugs to deliver to Urbano, the corroborating testimony of the federal agent who saw Hernandez present at the meeting between Sanchez and Urbano, and the intercepted communications in which Hernandez tried to arrange a meeting with Sanchez and in which Sanchez used coded language to refer to cocaine. Hernandez understandably would have preferred the jury to believe his implausible explanation that he did not know Urbano was a drug dealer when he worked for him, but the jury was not obliged to do so.

AFFIRMED.