**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued April 12, 2017
Decided June 2, 2017

***Before***

RICHARD A. POSNER, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 16-2344

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee,* | Court for the Northern District of Illinois, |
| | Eastern Division. |
| *v.* | |
| | No. 1:12-CR-00707-3 |
| WILLIE WOODS, | |
| *Defendant-Appellant.* | Sharon Johnson Coleman, |
| | *Judge.* |

**O R D E R**

After deliberating for approximately three hours, a jury convicted Willie Woods of six criminal offenses resulting from his involvement in a sex-trafficking ring that operated in Iowa and Illinois. On appeal, he challenges his convictions on Counts II and III, which charged him with the sex trafficking of two minors in violation of 18 U.S.C. § 1591. Specifically, he argues that there was insufficient evidence to prove that he knew or recklessly disregarded the fact that the two young girls were minors. He also argues that the government failed to provide sufficient evidence that he knew or recklessly

disregarded the fact that force, threats of force, fraud, or coercion would be used to cause the two minors to engage in commercial sex acts. Because we find that there was sufficient evidence to support the guilty verdicts on Counts II and III, we reject Wood's arguments and affirm his conviction.

## I. BACKGROUND

Willie Woods, along with co-defendants Shuntina McKee and Malik McKee (collectively the "defendants"), operated a prostitution ring in both Iowa and Illinois. As part of the scheme, the defendants recruited young girls to perform sex acts in exchange for money. While Woods was convicted of sex-trafficking three young girls, he challenges his convictions with regards to only two: Minors A and B.

In February 2012, a madam named "Red" brought then 14-year-old Minor A to a hotel in Cedar Rapids, Iowa to sell her to the defendants. Minor A told Shuntina and Woods that she was in an alternative school. Shuntina understood this to mean that Minor A was "slow." She also considered her "naïve" and "easy to manipulate." Nonetheless, Woods gave Minor A a bra and underwear to wear and then he and Malik took photographs of the 14-year-old girl posing in a sexually provocative manner. Woods used these photographs in an advertisement he posted on Backpage.com, a website used to advertise escort services.

After posting the advertisement, Woods took Minor A from Cedar Rapids to Iowa City, where he had sex with her to "train her" as a prostitute. The defendants then provided her with alcohol and drugs and sold her to strangers for sex, some of whom were responding to the Backpage.com advertisement that Woods had posted. Minor A was not permitted to keep any of the money she made from the "dates." Rather, the defendants split the money between themselves.

In April 2012, Malik and Woods invited Minor A to visit them at their home in Iowa City. This time, she brought a friend, Minor B, who was only 16 years old. Minor B told Malik and Woods, however, that she was 17 years old. Malik provided the minors with alcohol and marijuana. The next day, Malik, his cousin, and Woods took pictures of Minor B in her bra and underwear and wearing heels that Woods had provided. While taking these photos, Malik and Woods directed Minor B to pose in a sexually provocative manner. Later that day, Woods once more took pictures of Minor A in her bra, underwear, and heels.

While in Iowa City, the two minors had numerous "dates" with men who paid for the sexual encounters. But when Minor B was found having sex with a man for free, Malik directed his girlfriend, who was also a minor, to hit her. Woods was in the home when this happened and attempted to console Minor B, who was very upset and asked repeatedly to go home. Instead of being permitted to leave, however, Malik took her to Chicago to make the defendants more money.

In Chicago, Malik and Minor B met Shuntina at a hotel to continue the defendants' prostitution scheme. Even though Minor B told Shuntina that she was only 16 years old, Shuntina gave her alcohol, Ecstasy, and marijuana and sent her on numerous "dates." Repeatedly, Minor B asked to leave Chicago and return home. But each time, she was told that she could not leave. In fact, Malik told her that they would beat her if she even tried. They also threatened to leave her in a bad neighborhood if she did not continue to go on the "dates." Although not in Chicago, Woods spoke to Shuntina daily about how their "business" was going.

While Minor B was in Chicago, Minor A remained in Iowa City with Woods so that she could make enough money to join the McKees. During this time, Woods demanded to have sex with Minor A to further "train her." But when Minor A refused to do so, Woods threatened to starve her and withheld from her both food and cigarettes. Ultimately, Woods sent Minor A to meet the McKees in Chicago, where she went on more "dates" with men who paid for sexual encounters.

Eventually, Minor B told the McKees that her mother was searching for her and had placed a missing person's report with the police. Only then was she permitted to leave and return home. Minor A, however, remained in Chicago with the McKees, who continued to send her on "dates." One night after everyone fell asleep, Minor A was able to escape. She never returned to the defendants.

Months after she returned home, the FBI asked Minor B to record a telephone conversation with Woods. In two separate recorded conversations, Woods admitted to wondering whether Minor A was old enough to be on her own. He also acknowledged knowing that Minor B was only 17 years old at the time she was being sent on "dates."

At trial, the government presented testimony from both Minors A and B about their time with the defendants. Additionally, the jury heard testimony from Shuntina regarding the defendants' prostitution ring. The court admitted into evidence the Backpage.com advertisements for Minors A and B, and photographs of the two minors at the time they were victimized. Lastly, in his defense, Woods testified and denied all knowledge and

participation in the scheme, outside of driving a few young women to hotels on the McKees' behalf.

After three hours of deliberation, the jury returned a guilty verdict on six of the seven charges that Woods faced. Woods now appeals, arguing that there was insufficient evidence to support his convictions on Counts II and III, which charged him with sex trafficking of a minor or by force, threats of force, fraud, or coercion in violation of 18 U.S.C. § 1591.

## II. ANALYSIS

When analyzing a challenge to the sufficiency of the evidence, "we view the evidence in the light most favorable to the government." *United States v. Mbaye*, 827 F.3d 617, 619 (7th Cir. 2016) (quoting *United States v. Morales*, 655 F.3d 608, 634 (7th Cir. 2011)) (internal quotation marks omitted). We will overturn a conviction only when "the record is devoid of evidence from which a reasonable jury could find the defendant guilty beyond a reasonable doubt." *United States v. Sewell*, 780 F.3d 839, 847 (7th Cir. 2015) (quoting *United States v. Campbell*, 770 F.3d 556, 568 (7th Cir. 2014)) (internal quotation marks omitted). This is a high hurdle, as we will neither re-weigh the evidence nor will we assess the credibility of witnesses. *Id.* (citing *United States v. Griffin*, 150 F.3d 778, 784-85 (7th Cir. 1998)).

Here, Woods argues that there was insufficient evidence to support his convictions for sex-trafficking pursuant to 18 U.S.C. § 1591. He contends that the government had to prove, beyond a reasonable doubt, that he knew or recklessly disregarded that Minors A and B were under 18 years of age *and* that he knew or recklessly disregarded the fact that force, threats of force, fraud, or coercion would be used to cause the minors to engage in commercial sex acts. This reading of the law is incorrect. Rather, the statute is clear that the government was only required to prove that Woods knew or recklessly disregarded the fact that the minors were under 18 years of age *or* that he knew or recklessly disregarded the fact that force, threats of force, fraud, or coercion would be used to cause them to engage in a commercial sex act, not both. *See* 18 U.S.C. § 1591. Having clarified what the government was required to demonstrate, we now turn to the evidence presented against Woods.

Woods cannot clear the high hurdle he faces as we cannot say that the record was devoid of evidence from which a reasonable jury could have convicted him. First, the jury was presented with the Backpage.com advertisements for the two minors. These advertisements listed Woods' phone number and email address. They also

contained pictures of the minors posing in a sexually provocative manner in just their underwear and in heels, which Woods admits to providing. From looking at these photographs, the jury could reasonably have concluded that these two young girls were minors and that Woods either knew or recklessly disregarded that they were underage.

In addition, at trial, the two minors testified about their interactions with Woods. Both testified that they told him they were under 18 years of age. The jury was also presented with transcripts of the taped telephone conversations between Minor B and Woods, in which he admitted to knowing that Minor B was underage and having doubts about whether Minor A was old enough to be on her own. Additionally, Woods' co-defendant, Shuntina McKee, testified that she believed that Minor A, who was only 14 years old at the time she came into contact with the defendants, was "naïve" and "easy to manipulate." She also testified that Minor A told her and Woods that she was in an "alternative school," from which she inferred that Minor A was a bit "slow." Therefore, there was sufficient evidence from which a reasonable jury could find beyond a reasonable doubt that Woods knew or recklessly disregarded the fact that the two minors were under 18 at the time he caused them to engage in commercial sex acts.

Although the government only had to prove that Woods knew or recklessly disregarded the fact that the minors were under 18, there was also sufficient evidence that he knew or recklessly disregarded the fact that force, threats of force, fraud, or coercion would be used to cause the minors to engage in commercial sex acts. Minor A testified that Woods refused to feed her and withheld cigarettes from her because she would not have sex with him. He also would not let her leave. This is sufficient evidence to support the jury's verdict that Woods knew or recklessly disregarded the fact that force, threats of force, fraud, or coercion would be used to cause Minor A to engage in a commercial sex acts.

There was also testimony from which the jury could conclude that Woods knew that force, threats of force, fraud, and coercion would be used to cause Minor B to participate in a commercial sex act. For example, he knew that Malik McKee had instructed another young woman to strike Minor B when she was caught having sex for free. Additionally, there was evidence that he was in daily contact with Shuntina while she was running the ring out of various Chicago hotels. Based upon this record, the jury could reasonably conclude that he knew that Minor B was not being permitted to leave and that coercion was being used to cause her to engage in commercial sex acts. Therefore, Woods has not met his burden of demonstrating that the evidence was insufficient to support his convictions for sex trafficking, as charged in Counts II and III.

### III. CONCLUSION

We AFFIRM Woods' conviction.